**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

VOTE SOLAR; MICHAEL EISENFELD;
JAMES NEIDHART; JEFFREY
NEIDHART; STEVEN BAIR; NEIL
TRIBBETT; JERRY KNUTSON; VICKIE
SLIKKERVEER; THE COLISEUM, INC.,
d/b/a The Colosseum Gym; DAVID
FOSDECK; STEPHEN ELLISON; ERIN
HOURIHAN,

     Plaintiffs - Appellants,

v.

CITY OF FARMINGTON, d/b/a
Farmington Electric Utility System,

    Defendant - Appellee.

No. 20-2028

_____

**Appeal from the United States District Court**
**for the District of New Mexico**
**(D.C. No. 1:19-CV-00753-JAP-CG)**
_____

David C. Bender (Sara Gersen and Chinyere Osuala, with him on the briefs),
Earthjustice, Madison, Wisconsin, for Plaintiffs - Appellants.

Kristen Connolly McCullough (Sean M. Neal, Duncan, Weinberg, Genzer & Pembroke,
PC, and Jennifer Breakell, City Attorney for the City of Farmington, New Mexico, with
her on the brief), Duncan, Weinberg, Genzer & Pembroke, PC, Washington, DC, for
Defendant - Appellee.

_____

Before **McHUGH**, Circuit Judge, **LUCERO**, Senior Circuit Judge, and **CARSON**,
Circuit Judge.

_____

**LUCERO**, Senior Circuit Judge.

_____

This is a case about the contours of federal versus state jurisdiction under the jurisdictional scheme established by the Public Utility Regulatory Policies Act (PURPA).  Pub. L. 95–617, 92 Stat. 3117 (1978).  Generally, federal courts are understood to have jurisdiction over facial, or "as-implemented," claims regarding the implementation of federal agency rules by individual utilities or state utility commissions, while state courts hear individual "as-applied" claims regarding the application of those implementations to individual parties.  In this case, the district court rejected that established distinction, introducing a particularized and novel interpretation of PURPA's jurisdictional scheme under which federal courts have jurisdiction only if a utility fails to make any reasonable effort to implement a Federal Energy Regulatory Commission (FERC) rule.  In light of this interpretation, the district court granted defendant City of Farmington, New Mexico's motion to dismiss a claim brought by Plaintiffs, a number of Farmington residents who have installed solar panels on their homes or businesses and an advocacy group called Vote Solar.

An adoption of the district court's interpretation would create a circuit split on this issue.  We see no reason to do so.  The statutory text supports the jurisdictional framework as consistently interpreted by other federal courts, and every circuit court to address the issue, as well as the relevant federal agency, has operated under this framework since PURPA's passage.  We join them.

2

We reverse the district court's grant of the motion to dismiss and remand for further proceedings.

## I

We proceed in two parts. Part A covers the events that led to the proceedings below and this appeal; Part B discusses the statutory background to this case.

## A

In 2017, the City of Farmington (Defendant) adopted an ordinance that imposed additional charges on customers who generate their own electricity. See City of Farmington Res. 2017-1616. Defendant argues this change reflected the true cost imposed by these customers on the electric grid; Plaintiffs argue the charges amounted to price discrimination in violation of FERC rules. See 18 C.F.R. §§ 292.304(a), 292.305(a). This appeal does not require resolution of that substantive dispute.

After FERC declined Plaintiffs' petition to intervene, Plaintiffs brought suit in federal district court. Defendant moved to dismiss Vote Solar and several of the other plaintiffs for lack of standing. Sua sponte, the district court requested supplemental briefing concerning its statutory subject-matter jurisdiction. The parties, operating under the assumption that the as-implemented versus as-applied framework governed subject-matter jurisdiction, submitted the requested briefing, with Plaintiffs arguing they were lodging an as-implemented claim and Defendant characterizing the claim as as-applied. Due to its interpretation of PURPA's jurisdictional provisions, the district court concluded otherwise, dismissing the case

3

for failure to state a claim under Rule 12(b)(6).  This dismissal was based on the court's conclusion that because Plaintiffs did not argue that Defendant had made <u>no</u> effort to implement FERC's price discrimination rules, its claim did not fall within the district court's jurisdiction.  It also deemed Defendant's motion regarding standing moot.[1]  Plaintiffs now appeal.

## B

In 1978, Congress passed PURPA, a law intended to promote the development of small-scale renewable energy generation.  <u>See</u> <u>New York v. F.E.R.C.</u>, 535 U.S. 1, 9 (2002).  PURPA prohibited utilities from engaging in price discrimination when they bought or sold supplemental power from or to small energy producers.  For example, when a home or business with solar panels needs to buy extra power from or wants to sell surplus power to the local utility, PURPA bars the utility from charging that home or business different rates than it would any other customer or supplier.  <u>See</u> 16 U.S.C. § 824a-3-(b) ("Section 210(b)"[2]).  PURPA directs FERC to

---

[1] Both parties addressed standing in their briefs, but both also acknowledged that we do not need to resolve the issue on appeal.  We agree and refrain from doing so.  Defendant's standing challenge never asserted that all of the plaintiffs lack standing; our independent duty to ensure our Article III jurisdiction is satisfied.  Because the district court did not rule on standing, we leave that issue for the district court on remand.

[2] PURPA's provisions are generally referred to by their location in the original act rather than their codification in the code.  We accordingly use the PURPA sections to discuss the provisions relevant to this case.  They are each codified at 16 U.S.C. § 824a.

promulgate rules that would effectuate this anti-price discrimination scheme. See Section 210(a).

The jurisdictional scheme established in PURPA's Section 210 is what is at issue in this case. In one respect, it is a simple scheme. Section 210(a) directs FERC to issue the anti-price discrimination rules required by Section 210(b). Section 210(f) requires state public utility commissions and nonregulated independent utilities[3] to "implement" the rules issued by FERC under Section 210(a) by incorporating them into their regulations and procedures. What complicates the scheme is the question this case demands we answer: how—or, rather, where—the anti-price discrimination requirement is to be enforced. If a utility fails to meet its Section 210(f) obligations to "implement such rule[s]," there are two jurisdictional subsections that govern enforcement actions. Section 210(g) gives state courts jurisdiction to consider any person's challenge to "any proceeding conducted by a [utility] for purposes of implementing any requirement of a rule under [Section 210(a)]." Alternatively, Section 210(h) permits small power producers to ask FERC to enforce a utility's obligation to implement its rules under Section 210(f), and, if FERC does not do so, the small power producer may bring suit in federal district court against the utility to enforce those Section 210(f) requirements.

---

[3] A "nonregulated independent utility" is simply a utility in a state that lacks a public utility commission, a state body that regulates local utilities. New Mexico is a state without a public utility commission, so Defendant's utility is considered a nonregulated independent utility. This is merely nomenclature; for purposes of this case, nothing hinges on the distinction. For ease of reference, we refer to all covered entities under Section 210(f) simply as "utilities."

5

Demarcating the precise boundaries of state versus federal jurisdiction under Section 210 was left to the courts. While no single approach has been unanimously adopted, the most prominent paradigm came to center on a distinction between "as-implemented" and "as-applied" claims. As-implemented claims involve a contention that a utility failed to implement a FERC rule, rendering its regulations or procedures facially illegitimate. These claims fall within the jurisdiction of federal courts provided by Section 210(h)(2). In contrast, as-applied claims revolve around allegations that a utility's implementation plan is unlawful as applied to the individual petitioner. State courts have jurisdiction over as-applied claims under Section 210(g). This paradigm emerged from two district court cases[4] and has been adopted by the First, Fifth, and Eleventh Circuits.[5] We have never considered the issue, but a separate District of New Mexico court recently employed this framework. See Great Divide Wind Farm 2 LLC v. Becenti Aguilar, 405 F. Supp. 3d 1071, 1091-92 (D.N.M. 2019).

This District of New Mexico court diverged, resolving this case by way of a different and novel interpretation of Section 210's jurisdictional scheme. Rejecting the as-implemented versus as-applied paradigm, the district court concluded that the

---

[4] Mass. Inst. of Tech. v. Mass. Dep't of Pub. Utils., 941 F. Supp. 233, 236-37 (D. Mass. 1996); Greensboro Lumber Co. v. Ga. Power Co., 643 F. Supp. 1345, 1374 (N.D. Ga. 1986).

[5] Allco Renewable Energy Ltd. v. Mass. Elec. Co., 875 F.3d 64, 67-68 (1st Cir. 2017); Exelon Wind 1, L.L.C. v. Nelson, 766 F.3d 380, 388 (5th Cir. 2014); Greensboro Lumber Co. v. Ga. Power Co., 844 F.2d 1538, 1542 (11th Cir. 1988).

6

jurisdiction of federal courts is substantially more limited. It asserted that federal district courts may only address claims concerning whether a utility "outright fail[ed] to implement a FERC rule." Vote Solar v. City of Farmington, 2020 WL 673087, at *8 (D.N.M. Feb. 11, 2020). By this the district court appears to have redefined the question as whether the utility made any reasonable effort at implementation, rather than whether the implementation was successful or consistent with the FERC rule. See id. ("This reading . . . focuses on distinguishing compliance with FERC rules versus compliance with PURPA's mandate to make reasonable implementation efforts. Federal jurisdiction . . . should not be stretched to cover disputes over how well a regulatory entity implements FERC's rules." (emphasis in original)). Under the district court's interpretation, the task of ensuring that a utility's actions actually "comply with FERC's requirements" is left with state courts alone. Id.

## II

"The legal sufficiency of a complaint is a question of law, and a Rule 12(b)(6) dismissal is reviewed de novo." Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009). We also review questions of statutory interpretation de novo. Ausmus v. Perdue, 908 F.3d 1248, 1252 (10th Cir. 2018).

Section 210(h)(2) empowers federal courts to "enforce the requirements of subsection (f)," and subsection (f) states that utilities "shall, after notice and opportunity for public hearing, implement [FERC's] rule[s]." The scope of federal jurisdiction under Section 210 is thus fixed by the word "implement." At bottom, the district court reinterpreted the word 'implement' to require only a reasonable effort

7

by the utility to incorporate a FERC rule, while Plaintiffs argue that to 'implement' a rule requires the utility to act or regulate consistently with the rule.

Of these two proposed definitions, Plaintiffs' is the more persuasive. At the level of plain meaning, it seems to us a non sequitur to claim that a utility can "implement" a rule by issuing a regulation that is inconsistent with that rule. For example, if a supervisor establishes guidelines and tells an employee under supervision to implement them (picture here a doctor-nurse, architect-draftsman, judge-clerk situation), and due to a good-faith misunderstanding the employees fails to take the designated action despite making a reasonable attempt to do so, it can hardly be said that the employee has implemented the guideline action.

The Oxford English Dictionary defines "Implement" as "To complete, perform, carry into effect (a contract, agreement, etc.); to fulfill (an engagement or promise)." "Implement, v.," OED Online (last visited June 6, 2021). Effort, good faith, or reasonable attempt play no role in the word's common usage or its dictionary definition. Indeed, the district court's use of modifiers—"attempt to implement," "reasonable implementation efforts"—reveals the infirmity of its approach.

Other courts have repeatedly operated under the meaning urged by Plaintiffs, leaving the district court alone in its interpretation of Section 210's approach to jurisdiction. A number of circuit courts have held that federal courts have jurisdiction to consider whether utilities' regulations are consistent with FERC rules, not merely whether the regulations constitute a reasonable effort at incorporating the

8

rules. For example, the D.C. Circuit held, "The failure of a state commission to ensure that a rate does not exceed a utility's avoided cost is a failure to [implement]" and would therefore "be challenged through an enforcement action brought in district court under § 210(h)." New York State Elec. & Gas Corp. v. F.E.R.C., 117 F.3d 1473, 1476 (D.C. Cir. 1997). The question was not whether the state commission tried to ensure that the rate was lawful—the question was whether it was lawful. Similarly, in Allco, the First Circuit explained that federal courts have jurisdiction to consider whether a utility "failed to properly implement FERC's regulations." 875 F.3d at 68. Again, the question revolved around whether there was a "proper" implementation, not whether it was a reasonable attempt at one. And no one has drawn our attention to precedent rebutting these authorities or otherwise supporting the district court's interpretation.

FERC's understanding of Section 210 jurisdiction is the same. It considers its enforcement authority, which is coterminous with that of private parties when it declines to enforce 210(h) obligations, as extending "to situations where State regulatory authorities or nonregulated electric utilities are alleged to have completed the implementation process, but have promulgated regulations which are inconsistent with or contrary to the Commission's regulations." Policy Statement Regarding the Commission's Enf't Role Under Section 210 of the Public Util. Regul. Policies Act of 1978, 23 FERC 61304, 61644 (1983) (emphasis added).

Against these considerations of ordinary meaning, dictionary definitions, and an abundance of conflicting caselaw, Defendant and the district court offer little to

9

motivate their interpretation. Instead, both focus on the broader jurisdictional scheme of Section 210, highlighting the emphasis placed on state court review of local utility disputes. For example, the district court opinion characterized the role of state courts in judicial review under PURPA as broad, remarking that Plaintiffs' interpretation would give federal courts enough jurisdiction for "the exception (federal jurisdiction) to swallow the rule (state jurisdiction)." Vote Solar, 2020 WL 673087, at *10; see also Portland Gen. Elec. Co., 854 F.3d at 698 ("State-based adjudication serves as the mainstay for enforcing PURPA rights."). The court reasoned that a broad grant of federal jurisdiction would also contradict Congress' historical approach to utility regulation, which was never supposed to "displace state and local regulatory authority over electrical utilities." Vote Solar, 2020 WL 673087, at *10.

These concerns are misplaced. While the scope of state court jurisdiction under Section 210(g) may be broad, that is of course not a reason to overlook the statutory text of Section 210(h), which defines federal jurisdiction. That text gives federal courts jurisdiction over utilities' failure to implement rules; we cannot read into that text a relaxed standard demanding only a good-faith effort at implementation for the sake of general principles of federalism. Even if leaving judicial review under PURPA primarily in the hands of state courts was Congress' intention, that does not give us license to ignore the plain meaning of the statute.

We conclude that the majority approach is better: the implementation required by Section 210(f) and challenged by Plaintiffs under Section 210(h)(2) demands

10

facial consistency with FERC rules. PURPA requires that utilities implement FERC rules, and it empowers federal courts to review whether the utilities' implementation was successful on its face. If so, the utility has satisfied its federal obligation. But the utility may apply its own rules improperly to individual customers, in which case the customers may bring a claim in state court.[6]

## III

The judgment of the district court is **REVERSED**. We **REMAND** to the district court for further proceedings to implement our restated scope of federal jurisdiction under Section 210.

---

[6] We do not circumscribe the scope of state court jurisdiction under Section 210(g) with this decision. Although other circuit courts that have adopted the as-implemented versus as-applied approach have often done so by confining implementation claims exclusively to federal courts, we do not today follow suit. See Allco, 875 F.3d at 68 ("[F]ederal courts have exclusive jurisdiction over implementation challenges."); Exelon Wind, 776 F.3d at 388 (same). While implementation challenges that are brought under Section 210(h)(2) are exclusively federal, state court review under Section 210(g) covers "any proceeding . . . for purposes of implementing any requirement of a rule under [Section 210(a)]" or "any requirement established . . . pursuant to [Section 210(f)]." Whether challenges brought in state court under this capacious jurisdiction could have characteristics of an implementation challenge is a question not before us and one we do not resolve.

11